## UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA GAINESVILLE DIVISION

DONALD GEORGE MOSLEY,

     Plaintiff,

v.                            Case No.  1:24-cv-161-TKW/MJF

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Donald Mosley brings this action under 42 U.S.C. § 405(g) to seek review of a final adverse decision of the Commissioner of the Social Security Administration. Because the Commissioner applied the proper legal standards, and the decision is supported by substantial evidence, the District Court should affirm the Commissioner's decision.

### I.  PROCEDURAL HISTORY

On April 26, 2021, Plaintiff applied for supplemental security income ("SSI") alleging a disability-onset date of April 11, 2021. Tr. 238–43. The Social Security Administration ("SSA") denied his claim initially and on reconsideration. Tr. 80–88, 93–97. On November 2, 2023, the

administrative law judge ("ALJ") conducted a telephonic hearing. Tr. 35–58. On January 25, 2024, the ALJ issued a written decision and found that Plaintiff was not disabled. Tr. 14–27. The appeals council denied Plaintiff's request for review. Tr. 1–6. Thus, the ALJ's decision stands as the final decision of the Commissioner, subject to review by the District Court. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007). This appeal followed.

## II. STANDARD OF REVIEW

The District Court's review of the Commissioner's final decision is limited. The District Court reviews the Commissioner's decision to ensure that the Commissioner applied the proper legal standards and substantial evidence supports the decision. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The District Court reviews questions of law de novo. *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313–14 (11th Cir. 2021) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). For factual determinations, the District Court must determine whether the ALJ's decision is supported by "substantial evidence." *Id.* at 1313.

"Substantial evidence" is not an exacting standard. *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). Although substantial evidence is "more than a mere scintilla," it is not a preponderance; it requires only "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Id.*; *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938). Even if the evidence preponderates against the ALJ's findings, the District Court must affirm if the ALJ's decision is supported by substantial evidence. *Viverette*, 13 F.4th at 1314.

Pursuant to 20 C.F.R. § 416.920(a)(4),[1] the Commissioner analyzes a disability claim in five steps:

1.    Is the individual currently engaged in substantial gainful activity?

2.    Does the individual have any severe impairments?

3.    Does the individual have any severe impairments or combination of impairments that meet or equal those listed in 20 C.F.R. Part 404?

---

[1] Generally, the same legal standards apply to claims for DIB and SSI, but separate parallel statutes and regulations govern each claim. *See* 20 C.F.R. §§ 404, 416. Citations of statutes or regulations found in quoted court decisions in this report and recommendation should be considered to refer to the appropriate parallel provision.

4.    Does the individual have the residual functional capacity ("RFC") to perform work despite limitations, and are there any impairments that prevent past relevant work?

5.    Do the individual's impairments prevent other work?

The claimant bears the burden of establishing a severe impairment that keeps him from performing past relevant work. *See Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278 (11th Cir. 2020). If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy that, given all of the claimant's impairments, the claimant can perform. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021). If the Commissioner carries this burden, the claimant then must prove that he cannot perform the work suggested by the Commissioner.

### III. SUMMARY OF THE EVIDENCE

### A.    Plaintiff's Medical Records

Prior to his alleged onset date, on September 22, 2020, Plaintiff presented at Palms of Pasadena because "his legs gave out." Tr. 364. Plaintiff was ambulatory when he arrived at the emergency room and had a normal gait, but the physician noted minor abrasions on Plaintiff's

legs. Tr. 364, 366. The physician diagnosed Plaintiff with generalized weakness without cause. Tr. 370.

In November 2020, Plaintiff had an MRI study of his cervical spine, which showed mild degenerative joint disease at multiple levels and "a linear fracture defect at bilateral lamina of C7 without displacement." Tr. 1524. In May 2021, Plaintiff reported to his physicians that he was returning to his normal daily activities, including doing yard work. Tr. 426.

On February 7, 2022, Plaintiff presented to the emergency room for complaints of abdominal pain. Plaintiff reported that he had previously been admitted to Palms of Pasadena for treatment of a "blood infection." Tr. 465. A computer tomography scan of Plaintiff's abdomen revealed that Plaintiff had a "saccular aneurysm." Tr. 466, 549–50. The imaging also suggested avascular necrosis of the bilateral femoral heads. Tr. 466, 478, 549–50. Despite the avascular necrosis, the "joint space" was still "well maintained," and the provider noted that they would "recommend conservative management at the present time." Tr. 468.

On February 9, 2022, Plaintiff underwent an aortic resection surgery, which was successful. Tr. 492, 1653. On February 16, 2022, the physicians discharged Plaintiff from the hospital.

On March 3, 2022, Plaintiff sought treatment for abdominal pain. Tr. 681. Providers noted that Plaintiff appeared uncomfortable and exhibited tenderness in the lower abdomen. Tr. 682. On March 4, 2022, imaging of Plaintiff's hips showed mild bilateral hip osteoarthropathy. Tr. 728.

On March 23, 2022, Plaintiff was again admitted to the hospital with complaints of severe abdominal pain. Plaintiff had pain in the upper right quadrant of the abdomen that was tender to touch. Tr. 740, 746. Plaintiff, however, was able to move all his extremities and had normal sensation in his lower extremities. Tr. 741, 746, 750. On March 28, 2022, Plaintiff was discharged from the hospital.

Plaintiff's medical records from May 2022 to November 2023 reflect that Plaintiff was (1) able to ambulate without assistive devices, (2) had normal and steady gait and a normal range of motion, (3) had no muscle

weakness; (4) had "unlimited" mobility; (5) "walk[ed] frequently"[2]; and (6) had no edema in the lower extremities. Tr. 863, 886, 896, 1113, 1127–28, 1137, 1150–51, 1154, 1184, 1222, 1249, 1281,1293, 1334, 1357, 1359, 1390, 1495–97, 1768, 1772, 1787, 1798, 1804, 1845–46, 1848–49, 1851, 1874–75, 1938, 1967. For example, on May 12, 2022, physicians noted that Plaintiff had "unlimited mobility." Tr. 1113. On May 16, 2022, medical personnel observed Plaintiff "ambulating independently using no assistive device and [had] a steady gait." Tr. 1137. In August 2022, Plaintiff had normal balance and gait. Tr. 24, 1293. In October 2022, providers noted Plaintiff had a "steady gait" and "unlimited" mobility. Tr. 24, 1334. In October 2023, at an appointment to address hip pain, the provider noted that Plaintiff had "no noticeable limp" and "jump[ed] up off the table and storm[ed] out of the room . . .." Tr. 1875.

---

[2] Medical staff completed multiple Braden Scale for Predicting Pressure Sore Risk forms, and Plaintiff received a 4/4 in both the "Activity" and "Mobility" categories. Tr. 1804, 1833, 1848–49. "A 4/4 in the category of 'activity' means the patient 'walks frequently,' and is able to walk 'outside [the] room at least twice a day and inside [the] room at least once every two hours during waking hours.'" *Johnson v. Colvin*, No. 2:13-CV-0071, 2014 WL 789084, at *3 n.10 (W.D. Pa. Feb. 26, 2014). "[A] score of 4/4 in mobility means that he had 'no limitation' in the ability 'to make major and frequent change in position without assistance.'" *Id.* at *11.

**B.    The Opinion of Dr. Gutierrez**

On October 21, 2021, Dr. Roland Gutierrez—a non-examining state agency physician who reviewed Plaintiff's application for SSI—opined that Plaintiff could "stand and/or walk (with normal breaks)" for 6 hours in an 8-hour workday and "sit (with normal breaks)" for 6 hours in an 8-hour workday. Tr. 62. Dr. Gutierrez concluded that these limitations were reasonable because the medical record did not document "gait abnormalities" and reflected that Plaintiff had "essentially normal strength, reflexes, sensation and ROM" in his extremities. *Id.* Dr. Gutierrez also noted that Plaintiff's lungs were clear and his heart exams were normal. *Id.*

**C.    The Opinion of Nurse Practitioner Roberts**

On December 3, 2023, Nurse Practitioner Amy Roberts authored a letter in which she opined that Plaintiff should be limited to standing and walking 3 hours in an 8-hour workday. Tr. 1726. She asserted that without any limitations, Plaintiff faced a significant risk of decompensation. *Id.* She also noted that Plaintiff's "abdominal aortic aneurysm pos[es] a significant threat to [Plaintiff's] functional limitations as well, with a risk of rupture, and furthermore death." *Id.*

## IV.  THE ALJ'S FINDINGS

In denying Plaintiff's claim, the ALJ made the following findings under 20 C.F.R. § 416.920(a)(4)(i)–(v):

1.      Plaintiff had not engaged in substantial gainful activity since April 26, 2021, the application date.

2.      Plaintiff had the following severe impairments: kidney disease, asthma, chronic obstructive pulmonary disease (COPD), status post resection of abdominal aortic aneurysm (AAA) surgery, degenerative disc disease of the cervical spine, and avascular necrosis of the femoral head, bilaterally.

3.      Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

4.      Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) with the additional following limitations:

> [Plaintiff is] able to stand or walk for no more than 4 hours of an eight-hour workday; [and] able to sit for no more than 6 hours of an 8-hour workday.[3]

---

[3] The undersigned identifies only those limitations in the RFC that are relevant to the argument raised by Plaintiff on appeal.

5.    Plaintiff had no past relevant work, but given his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.

6.    Plaintiff was not disabled, as defined in the Act, from April 26, 2021, through the date of the decision. Tr. 17–27.

## V. DISCUSSION

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ erred in discounting Nurse Practitioner Roberts's opinion. Doc. 13 at 1.

An ALJ must assess a claimant's RFC and ability to perform past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citation omitted). In determining a claimant's RFC, the ALJ must consider all relevant evidence in the record, including the opinions of medical and non-medical sources. 20 C.F.R. § 416.945(a)(3).

Under the SSA's regulations, an ALJ is required to review both medical opinions and prior administrative medical findings. 20 C.F.R. §

416.920c(a). The ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." *Id.*; *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 897 (11th Cir. 2022). Instead, the ALJ will consider medical opinions and prior administrative medical findings together with the following factors, as appropriate: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors. 20 C.F.R. § 416.920c(c)(1)–(5). Supportability and consistency are the most important factors an ALJ considers when evaluating the persuasiveness of a medical opinion or prior administrative medical finding. *Id.* § 416.920c(b)(2); *Bailey v. Soc. Sec. Admin., Comm'r*, No. 22-11531, 2023 WL 4553880, at *2 (11th Cir. July 17, 2023); *Bevis v. Comm'r of Soc. Sec.*, 552 F. Supp. 3d 1266, 1271 (M.D. Fla. 2021); *accord Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024).

With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical findings(s), the more persuasive the medical opinions or prior

administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1); *Major v. Kijakazi*, 660 F. Supp. 3d 1229, 1235 (N.D Fla. 2023). With respect to consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical fining(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2); *Major*, 660 F. Supp. 3d at 1235.

An ALJ's explanation of consistency and supportability must be "sufficiently detailed." *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021). Even so, "a judge need not reiterate the magic words 'support' and 'consistent' for each [source]." *Zaborowski*, 115 F.4th at 639. Ultimately, an ALJ's explanation of consistency and supportability is sufficient if it allows the court "to undertake a meaningful review of whether [the ALJ's] reasoning was supported by substantial evidence . . . ." *Pearson v. Comm'r Soc. Sec.*, No. 1:20-cv-166-HSO-RPM, 2021 WL 3708047, at *5 (S.D. Miss. Aug. 11, 2021) (collecting cases), *report and recommendation adopted*, 2021 WL 3663073, *2 (S.D. Miss. Aug. 18, 2021). "[A]n ALJ's failure to properly consider and apply the requisite factors is grounds for remand." *Ayala v. Kijakazi*, 620 F.

Supp. 3d 6, 17 (S.D.N.Y. 2022) (citations omitted); *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 883–84 (D. Vt. 2021).

In the present case, the ALJ reviewed both Dr. Gutierrez's and Roberts's opinions regarding Plaintiff's ability to stand and walk. Tr. 24. The ALJ concluded that Dr. Gutierrez's opinion was persuasive while Roberts's opinion was not. *Id.* The ALJ gave two bases for these conclusions. First, Roberts's opinion was inconsistent with the medical record, which indicated that Plaintiff generally had full strength, sensation, and mobility of his lower extremities. *Id.* The dearth of objective evidence in the record reflecting limitations in walking or standing, the ALJ concluded, "did not support [the] degree of walking or standing" limitations stated in Roberts's opinion. *Id.* Second, Roberts's opinion conflicted with Dr. Gutierrez's opinion. The ALJ explained that Dr. Gutierrez's opinion was more consistent with the medical record and Dr. Gutierrez had "greater expertise" than Roberts.[4] Tr. at 24–25.

---

[4] Because the ALJ's determination that Roberts's opinion was not supported by the medical record is itself a sufficient basis for discounting her opinion, the undersigned does not address the ALJ's second basis for discounting the opinion.

Although Plaintiff asserts that Roberts's opinion was supported by the medical records that included diagnoses of and treatment for "back pain, neck pain, abdominal pain, idiopathic neuropathy, cervical degenerative disc disease, mild bilateral hip osteoarthropathy, and right hip pain," mere diagnoses alone cannot support a finding of limitations on a plaintiff's ability to work. *Moore*, 405 F.3d at 1213 n.6 (holding that the mere existence of impairments does not reveal the extent to which they limit the claimant's ability to work or undermine the ALJ's determination in that regard); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) (holding that the severity of an impairment "must be measured in terms of its effect upon the ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality").

The ALJ discussed Plaintiff's complaints of pain and the medical diagnoses as well as the treatment Plaintiff received. The ALJ noted Plaintiff's medical records did not contain evidence that Plaintiff had a loss of strength, sensation, or mobility in his legs. In fact, during the relevant period, Plaintiff's medical providers consistently noted that Plaintiff exhibited: (1) full strength in his legs; (2) full range of motion in

his legs; (3) a steady gait when he walked; and (4) the ability to ambulate without assistive devices. Tr. 380, 395, 426, 495, 496, 498, 641, 647, 648, 653, 657, 693, 703, 741, 863, 886, 896, 1113, 1127–28, 1137, 1150–51, 1154, 1184, 1222, 1249, 1281,1293, 1334, 1357, 1359, 1390, 1495–97, 1768, 1772, 1787, 1798, 1804, 1845–46, 1848–49, 1851, 1874–75, 1938, 1967. These findings—based on multiple examinations of Plaintiff— reasonably support the conclusion that Plaintiff was stronger and more capable of walking and standing than Roberts opined. Also, as the ALJ noted, these medical records are consistent with and support Dr. Gutierrez's opinion that Plaintiff could stand and walk for six hours per workday. Tr. 24. It is within the ALJ's province to resolve conflicts between medical opinions. *Watson v. Heckler*, 738 F.2d 1169, 1172 (11th Cir. 1984).

Furthermore, while Plaintiff asserts that the ALJ "cherry-picked" medical records to support the RFC, the record reflects that the ALJ considered Plaintiff's medical conditions as a whole. "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Additionally, "[u]nder a substantial evidence standard of review, [the

claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017). Thus, even if the evidence preponderates against the ALJ's findings, the District Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner and instead must defer to the Commissioner's decision when it is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). In his decision, the ALJ discussed Plaintiff's complaints regarding back, hip, and abdominal pain. Tr. 23. The ALJ, however, also discussed that the medical records did not indicate that Plaintiff suffered a loss of strength, sensation, or mobility in his legs. Tr. 24. Thus, it is evident that the ALJ considered Plaintiff's complete medical condition and did not impermissibly "cherry pick" certain records to support the RFC determination.

Finally, to the extent the Plaintiff asserts that the ALJ did not properly account for Roberts's concerns regarding Plaintiff's saccular aneurysm, Plaintiff again has not shown reversible error. The ALJ explicitly considered the saccular aneurysm and provided limitations in

the RFC related to this impairment. The ALJ explained, "the record also contains . . . evidence of 'saccular aneurysm' . . . and bilateral femoral avascular necrosis. The undersigned finds that this evidence supports finding the claimant limited to no more than four hours of standing or walking in an 8-hour workday." Tr. 24. Thus, the ALJ considered the limitations and accounted for them by imposing a stricter limitation than what Dr. Gutierrez recommended. *Id.* ("[T]he undersigned's findings mostly align with [Dr. Gutierrez's] opinion with all departures from his opinion in the direction of greater restrictions.").

Because the ALJ applied the proper legal standards and his opinion is supported by substantial evidence, the District Court must affirm the Commissioner's decision.

## VI. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that the District Court:

1.    **AFFIRM** the Commissioner's decision and **DISMISS** this action.

2.    Enter **FINAL JUDGMENT**, pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the Commissioner's decision.

3.    **DIRECT** the clerk of the court to close the case file.

At Pensacola, Florida, this <u>9th</u> day of April, 2025.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters.** ***See*** **N.D. Fla. Loc. R. 72.2;** ***see also*** **28 U.S.C. § 636(b)(1)(B)–(C); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** ***See*** **11th Cir. Rule 3-1; 28 U.S.C. § 636.**